## PERKINS v. WARBURTON et al.

(District Court, D. Maryland. March 30, 1922.)

No. 279.

**1. Courts ⚖➾505—Federal court without jurisdiction to administer general estate of decedent.**

Under the law as settled by the Supreme Court, a federal court of equity is without jurisdiction to take over and assume control of the general administration of the estate of a decedent already in process of administration by a probate court of the state.

**2. Conversion ⚖➾21(2)—Direction to sell real estate does not operate to convert it into personalty as to creditors.**

While a provision of a will directing that testator's real estate be sold effects a conversion of the entire estate into personalty, as between the heirs, devisees, legatees, and next of kin, it does not have that effect as to creditors.

**3. Courts ⚖➾489(13)—Federal court held to have jurisdiction of creditor's suit to administer real estate of decedent.**

Under Code Md. art. 93, § 290, which vests the courts of equity with co-ordinate jurisdiction with the orphans' courts to order a sale of real estate of a decedent, where the personal estate is insufficient to pay debts, a federal court of equity may entertain a bill by a creditor whose status entitles him to invoke its jurisdiction for the enforcement of his claim and those of other creditors against the real estate of a decedent, on an allegation of insolvency of the estate, and may appoint a receiver for such real estate.

**4. Creditors' suit ⚖➾11(1)—Creditor of decedent may maintain creditor's bill without first obtaining judgment.**

One who claims to be a creditor of a decedent may maintain a creditor's bill, without first obtaining a judgment at law.

In Equity. Suit by Thomas W. Perkins, receiver of the Second National Bank of Elkton, Md., against Henry A. Warburton and others. On motion to dismiss bill. Denied.

W. Thomas Kemp and John B. Deming, both of Baltimore, Md., for plaintiff.

Omar D. Crothers, of Baltimore, Md., for defendants.

ROSE, District Judge. The plaintiff is the receiver, appointed by the Comptroller of the Currency, of the Second National Bank of Elkton, Cecil county, Md. The defendants are the widow, heirs at law, and executor of William T. Warburton, late of that county, deceased, and some time president of the bank. He died very shortly before the institution of these proceedings, leaving a will by which he appointed a son, the defendant Henry A. Warburton, as executor, and empowered him, under the directions of the orphans' court of Cecil county, to sell all his property, real as well as personal, and, after the payment of testator's debts, to invest the balance; his widow, the defendant Anna M. Warburton, to receive the income during her life, and at her death the principal was to be divided

between his two sons, the defendants Charles E. Warburton and Henry A. Warburton. The will was admitted to probate, and letters testamentary thereon were issued to the defendant Henry A. Warburton, by the orphans' court of the county so shortly before the filing of the instant bill that little or no progress had at that time been made in the administration of the estate.

The plaintiff sues for himself and all other creditors who may come in and contribute to the expense of the litigation. He alleges that the testator, at his death, owed the bank much money, $5,800 of it being evidenced by an overdue promissory note, and was indebted to a number of individuals in amounts which aggregate, together with what is owing to the bank, a sum in excess of the value of all his estate, real and personal, so that he died insolvent in every sense of that word. The bill asserts that his creditors are entitled to have the real estate of which he died seized sold, and the proceeds applied, so far as they will go, to the payment of his debts. The relief asked for is:

(1) An accounting, under the direction of this court, of (a) all debts due and owing by the testator; (b) his personal estate coming into the hands of his executor; (c) priorities, if any, of his various debts; (d) out of which funds, and in what order, the debts are respectively payable.

(2) The assumption of full and complete jurisdiction of the future administration of his personal estate.

(3) The sale of his real estate, or so much thereof as may be necessary, for the payment of his debts, which the personalty shall not suffice to discharge.

(4) The appointment of a receiver to collect from the executor the net proceeds of the personal estate, and to conserve and sell the real estate, or so much thereof as may be necessary.

(5) The enjoining of each of the defendants from removing, or disposing of any of the property or estate of the testator, except in pursuance of the orders of this court.

(6) Notification to all creditors to file their claims in this court.

(7) Such other and further relief as the case may require.

No question is made of the right of the plaintiff, as a receiver of a national bank, and therefore an officer of the United States, to maintain this suit, irrespective of the citizenship of the parties or the amount in controversy, provided the federal court has jurisdiction over the subject-matter, and under the circumstances of the res; but the defendants have united in a motion to dismiss the bill on a number of grounds, some of them expressed in quite general language, but which, in substance, are reducible to two, viz.:

(1) That this court has no jurisdiction over the administration of a decedent's estate in Maryland, and cannot exercise any such control over an executor or administrator as will draw to it the possession and administration of the estate, and invest it with the authority to determine all claims against it.

(2) That the real as well as the personal estate of the decedent were, prior to the filing of the bill in this case, in the possession and under the control of the orphans' court of Cecil county, which for much, if not all, of the relief here asked, is a court of concurrent jurisdiction.

[1] The first of these contentions is practically a quotation from one of the headnotes to the decision in Byers v. McAuley, 149 U. S. 608, 13 S. Ct. 906, 37 L. Ed. 867. The plaintiff, however, answers that in 1787, and for many decades, if not centuries, preceding, the administration of decedents' estates was a well-established and frequently exercised head of equitable jurisdiction. The Maryland courts of chancery, as well before as after the adoption of the federal Constitution, made free use of it, and that this present bill is little more than the adaptation to the special facts of this controversy of the forms contained in Alexander's Maryland Chancery Practice, published in 1839, and which themselves had been in use in the state for many years. From these premises he argues that the ecclesiastical courts in England, and the probate courts in Maryland, and probably in many other states, were not and are not courts of co-ordinate or concurrent jurisdiction with courts of chancery, so far as concerns the administration of estates, although, independently of modern statutes, they had exclusive control over all matters of probate, strictly so called —that is, over the establishment of wills and the granting of letters testamentary and of administration; that the High Court of Chancery and the state equity courts could, and did habitually, upon proper cause shown, take over from the spiritual and probate tribunals the administration of estates; and he insists that a court of the United States, at the suit of one entitled because of his citizenship or his status to invoke its aid, may and must exercise at least all the equitable jurisdiction which in 1789 was vested in the English High Court of Chancery,

and is now possessed by a state equity court in a commonwealth in which the federal court is sitting. He treats, as besides the mark, the suggestion that so to hold would require a court of the United States to pass upon many controversies between citizens of the same state, in which there was no possible federal question involved. He says that it happens in practically every creditors' bill, filed by a citizen of one state against a corporation of another, alleging insolvency, and praying the appointment of a receiver.

If it be admitted that the plaintiff is a creditor and that the defendant is unable to pay its debts, the federal court takes the property into its custody and passes upon all claims against it, without thought as to the citizenship of any of the claimants other than that of him who first sought its aid. As a matter of fact, a large majority of them are usually citizens of the state from which the defendant received its charter. He of course admits that, as was pointed out in Byers v. McAuley, supra, the jurisdiction over such secondary controversies is ancillary, and is the necessary result of the court having taken into its hands, all that the defendant has, so that justice requires that it shall hear every one who asserts rights in or against that which it holds, no matter whence he comes.

The plaintiff in addition suggests that, as the foundation of the jurisdiction over the ordinary creditors' bill against an insolvent corporation, and over such a bill as he files for the administration of a decedent's estate is in essence the same, namely, that there is a trust fund not adequate to meet all the claims upon it, it must always follow that the creditor of the other state has a direct interest in contesting all other claims against the estate, for everything that is allowed to anybody other than himself necessarily diminishes that which he will receive. He argues that it is really immaterial that, before the administration is completed, it will be necessary to pass upon the claims of many resident creditors. The person having the right to invoke the equitable jurisdiction of the federal court cannot be prevented from so doing because as an incidental consequence thereto, the court may be called upon ultimately to pass upon controversies over which it would not have original jurisdiction.

The argument assumes that, at the instance of one so situated, the District Court has original jurisdiction to entertain a bill for the general administration of a decedent's estate. Logically the contention is strong. It rests upon the unquestioned exercise of that very jurisdiction both by the High Court of Chancery in England and by many state courts of equity, and is apparently a natural deduction from principles enunciated in general terms by the Supreme and other federal courts, and frequently approvingly repeated by text writers of the highest authority. There is, nevertheless, one conclusive answer to it. The Supreme Court has said, in so many words, that the jurisdiction does not exist. Byers v. McAuley, supra; Waterman v. Canal-Louisiana Bank & Trust Co., 215 U. S. 33, 30 S. Ct. 10, 54 L. Ed. 80. It bases its conclusion, in large part, at least, upon the lack of power in a District Court to disturb the control which the state probate tribunal has already acquired over the personalty of the decedent.

The plaintiff suggests that it is possible that in some states probate courts have been given such large chancery powers that they are in fact courts of equity, with a jurisdiction co-ordinate with that of the federal courts, so that, having first acquired custody of what the deceased left, they cannot be deprived of it (Hale v. Tyler [C. C.] 115 F. 837), but that no such condition exists in Maryland. Here the equitable jurisdiction of the orphans' courts is exceedingly limited, and they are poorly equipped to exercise any of moment, so that upon occasion other courts must act. He argues that the refusal in Byers v. McAuley to take over the administration must be limited to those states in which the equitable powers of the probate courts are more ample than are those of the orphans' courts in Maryland. The Supreme Court has, however, hinted at no such limitation, and it does not appear that it had any such in mind. It follows that so much of the bill of complaint as asks the court to take over the general administration of the personal estate of the testator cannot be sustained.

[2] The defendants contend that there is, in contemplation of a court of equity, no other estate to be dealt with. In their view, the directions of the will worked, as of the date of the decedent's death, a conversion of his realty into personalty, so that all his estate is now personal. There is, of course, no question that equity assumes that what should be done has been. The defendants have cited numerous cases to show that, as between heirs, devisees, next of kin, and legatees, such provisions as are to be found in this will do work a conversion, but none have been referred to which show that any such direction as has been here found has the

effect of ousting the jurisdiction of equity to entertain a creditor's bill to sell the real estate of a decedent, whether testate or intestate, whose personalty is not sufficient to pay his debts.

[3] Section 290 of article 93 of the Code, which confers jurisdiction upon the orphans' court to direct the sale of real estate under such circumstances, contains an express provision that it shall not be necessary to the validity of the sale of any such real estate by the executor that the same be ratified by the orphans' court, in any case where a court of equity of competent jurisdiction has assumed jurisdiction in relation to the sale of any such real estate. It has been expressly decided by the Court of Appeals of Maryland that it was the design of the Legislature, in conferring upon the orphans' court this jurisdiction, to save in ordinary cases the expense and delay incident to chancery proceedings, but not to take away jurisdiction in equity where the parties choose to invoke it. Wright v. Williams, 93 Md. 69, 48 A. 397.

In Maryland, the debts of a decedent, whose personal estate will not suffice to pay what he owes, have constituted a charge upon his lands, and the state courts of equity since 1785 have, in a suit instituted by any of his creditors, been expressly empowered to decree a sale of all or so much of his real estate as may be necessary to discharge his obligations. That the District Court of the United States may and must exercise its concurrent jurisdiction whenever, prior to any appeal to a state tribunal, it has been invoked by one whose personal or official status entitled him to do so, is a principle so familiar as not to require or justify citation of authority.

[4] One who claims to be a creditor of a decedent may maintain a bill such as this without first obtaining a judgment at law. Ingle v. Jones, 9 Wall. 495, 19 L. Ed. 621; Johnson v. Powers, 139 U. S. 156, 11 S. Ct. 525, 35 L. Ed. 112; Underground Electric Rys. Co. v. Owsley, 176 F. 36, 99 C. C. A. 500. Where the real and personal estate are together insufficient to pay a decedent's debts, the court, under a bill of the character of that in the instant case, may put the real estate into the hands of a receiver. McKaig v. James, 66 Md. 583, 8 A. 663.

The sum of the whole matter is that, while this court may not take over the administration of the personal estate, it has jurisdiction to grant much of the relief asked for by the plaintiff, and the motion of the defendants to dismiss his bill must be denied.